## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| KAWS, INC., <br><br> Plaintiff, <br><br> v. <br><br> THE INDIVIDUALS, CORPORATIONS, LIMITED LIABILITY COMPANIES, PARTNERSHIPS, AND UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE A TO THE COMPLAINT, <br><br> Defendants. | Case No.: |

### COMPLAINT

Plaintiff KAWS, Inc. ("Plaintiff"), hereby alleges as follows against the individuals, corporations, limited liability companies, partnerships, and unincorporated associations and foreign entities identified on **Schedule A** attached hereto (collectively, "Defendants"):

### Introduction

1.      This action has been filed by Plaintiff to combat online counterfeiters who trade upon Plaintiff's reputation and goodwill by selling and/or offering for sale products in connection with the KAWS copyrights, which are covered by U.S. Copyright Office Registration Nos. VA 2-180-272 and VA 2-182-652 (the "KAWS Copyrights"); and the KAWS trademarks, which are covered by U.S. Trademark Registration Nos. 6,046,763, 6,047,656, 6,102,259, 6,102,260, and 6,116,823 (the "KAWS Trademarks").

2.      The registrations are valid, subsisting, and in full force and effect. True and correct copies of the federal copyright registration certificates for the KAWS Copyrights are attached hereto as **Exhibit 1**. A true and correct copy of the federal trademark registration certificates for

1

the KAWS Trademarks, as well as a printout from the USPTO website evidencing Plaintiff as the owner of the KAWS Trademarks is attached hereto as **Exhibit 2**.

3.     Defendants are improperly advertising, marketing, and/or selling unauthorized and illegal products infringing upon Plaintiff's KAWS Copyrights and KAWS Trademarks (the "Counterfeit Products"). By selling Counterfeit Products that purport to be genuine and authorized products using the KAWS Copyrights and KAWS Trademarks (the "KAWS Products"), Defendants cause confusion and deception in the marketplace.

4.     The Defendants create numerous fully interactive commercial internet stores operating under the online marketplace accounts identified in Schedule A attached hereto (collectively, the "Defendant Internet Stores"), including on the platforms Alibaba.com ("Alibaba"); AliExpress.com ("AliExpress"), Amazon.com ("Amazon"), DHgate.com ("DHgate"), eBay.com ("eBay"), etsy.com ("etsy"), JD.com ("JD"), Redbubble.com ("Redbubble"), Walmart.com ("Walmart"), and Wish.com ("Wish") (collectively, the "Marketplace Platforms").

5.     The Defendants design the online marketplace accounts to appear to be selling genuine KAWS Products, while selling inferior imitations of such products.

6.     The Defendant Internet Stores share unique identifiers, such as design elements and similarities of the counterfeit products offered for sale, establishing a logical relationship between them and suggesting that Defendants' illegal operations arise out of the same transaction, occurrence, or series of transactions or occurrences.

7.     Defendants attempt to avoid liability by going to great lengths to conceal both their identities and the full scope and interworking of their illegal counterfeiting operation. Plaintiff is forced to file this action to combat Defendants' counterfeiting of the KAWS Copyrights and KAWS Trademarks, as well as to protect unknowing consumers from purchasing Counterfeit Products.

8.     As a result of Defendants' actions, Plaintiff has been and continues to be irreparably damaged through consumer confusion, dilution, and tarnishing of its valuable copyright and goodwill and, therefore, seeks injunctive and monetary relief.

2

9.      This Court has personal jurisdiction over each Defendant, in that each Defendant conducts significant business in New York and in this Judicial District, and the acts and events giving rise to this lawsuit of which each Defendant stands accused were undertaken in New York and in this Judicial District.

10.      In addition, each Defendant has offered to sell and ship infringing products into this Judicial District.

## Subject Matter Jurisdiction

11.      This Court has original subject matter jurisdiction over the copyright claim pursuant to the Copyright Laws of the United States, 17 U.S.C. § 101 et seq., 28 U.S.C. § 1338(a)–(b), and 28 U.S.C. § 1331.

12.      This Court has original subject matter jurisdiction over the trademark infringement and false designation of origin claims in this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051 et seq., 28 U.S.C. § 1338(a)–(b), and 28 U.S.C. § 1331.

13.      This Court has jurisdiction over the unfair deceptive trade practices claims in this action that arise under the laws of the State of New York pursuant to 28 U.S.C. § 1367(a), because the state law claims are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts.

## Personal Jurisdiction and Venue

14.      Personal jurisdiction exists over Defendants in this Judicial District pursuant to C.P.L.R. § 302(a)(1) and C.P.L.R. § 302(a)(3), or in the alternative, Fed. R. Civ. P. 4(k) because, upon information and belief, Defendants regularly conduct, transact, and/or solicit business in New York and in this Judicial District; derive substantial revenue from business transactions in New York and in this Judicial District; and/or otherwise avail themselves of the privileges and protections of the laws of the State of New York such that this Court's assertion of jurisdiction over Defendants does not offend traditional notions of fair play and due process.

CSDOCS/41279442v2

15.     In addition, Defendants' illegal counterfeiting and infringing actions have caused injury to Plaintiff in New York and in this Judicial District such that Defendants should reasonably expect such actions to have consequences in New York and this Judicial District.

16.     For example, Defendant Internet Stores accept orders of Counterfeit Products from and offer shipping to New York addresses located in this Judicial District. Screen shots of the shopping cart from Defendant Internet Stores allowing Counterfeit Products to be shipped to Manhattan are attached to the Declaration of Gen Watanabe ("Watanabe Decl."), filed contemporaneously herewith, as **Exhibit 3**.

17.     Moreover, upon information and belief, Defendants were and/or are systematically directing and/or targeting their business activities at consumers in the U.S., including those in New York, in this Judicial District, through accounts (the "User Account(s)") on e-commerce sites including the  Marketplace Platforms, as well as any and all as yet undiscovered User Accounts with additional online marketplace platforms held by or associated with Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with any of them. Through these User Accounts, consumers in the U.S., including New York (and more particularly, in this Judicial District), can view the marketplace accounts that each Defendant operates, uses to communicate with Defendants regarding their listings for Counterfeit Products, and to place orders for, receive invoices for and purchase Counterfeit Products for delivery in the U.S., including New York (and more particularly, in this Judicial District), as a means for establishing regular business with the U.S., including New York (and more particularly, in this Judicial District).

18.     Defendants have transacted business with consumers located in the U.S., including New York (and more particularly, in this Judicial District), for the sale and shipment of Counterfeit Products.

19.     Venue is proper in this Court pursuant to at least 28 U.S.C. §§ 1391(b)(2) and 1400(a) because Defendants have committed acts of copyright infringement in this Judicial District and do substantial business in the Judicial District.

4

**The Plaintiff**

20.     Plaintiff KAWS, Inc. is a New York domestic business corporation with its principal place of business in Brooklyn, New York.

21.     Plaintiff is the registered owner of the KAWS Copyrights (attached as Exhibit 1), as follows:

| Copyright Reg. No. | Copyright | Registration Date |
|---|---|---|
| VA 2-180-272 | Companion | Dec. 2, 2019 |
| VA 2-182-652 | BFF | Dec. 12, 2019 |

22.     Plaintiff is the registered owner of the KAWS Trademarks (attached as Exhibit 2) as follows:

| U.S. TM Reg. No. | Trademark | Registration Date |
|---|---|---|
| 6,046,763 | KAWS (Classes 6, 9, 14, 16, 18, 20, 25, 28) | May 5, 2020 |
| 6,047,656 | KAWS (Class 35) | May 5, 2020 |
| 6,102,259 | XX (Classes 6, 9, 18, 20, 25, 35) | Jul. 14, 2020 |
| 6,102,260 | Head with XX eyes (Classes 25, 28) | Jul. 14, 2020 |
| 6,116,823 | XX (Classes 18, 25) | Aug. 4, 2020 |

**The Defendants**

23.     Defendants are individuals and business entities who, upon information and belief, reside mainly in the People's Republic of China or other foreign jurisdictions.

24.     Defendants are merchants on online e-commerce platforms, including the Marketplace Platforms.

CSDOCS/41279442v2

**The KAWS Products**

25.     Artist and designer Brian Donnelly has been creating images and sculptures based on his original characters since he began his career as a graffiti artist in the early 1990s. Through Mr. Donnelly's imagination and creativity, Mr. Donnelly's work has exploded in popularity, and today can be found in galleries, institutions, and private collections around the world. Mr. Donnelly sells his works under his pseudonym, KAWS. Mr. Donnelly's KAWS Products have acquired national and worldwide fame and recognition because of their unique and novel designs.

26.     Indeed, Mr. Donnelly "has become a bona fide cultural phenomenon in recent years, growing his oeuvre from limited-edition toys to multi-million dollar paintings while setting up lucrative collaborations with brands like Dior and UNIQLO."[1] He was ranked #29 in ArtReview's "Power 100" list of the most influential people in 2021 in the contemporary art world, which described him as "[a] brand name through commercial partnerships and celebrity supporters that few can match."[2]

27.     Much of Mr. Donnelly's art involves the repeated use of a cast of figurative characters and motifs that appear in a variety of settings and poses. Many KAWS works involve a distinctive shared visual and conceptual vocabulary involving skull-and-crossbones heads and/or X eyes. For example, one of the most notable KAWS works is "Companion," a cartoonish character featuring the trademark KAWS skull, bones, and X eyes:

---

[1] Sarah Cascone, Artnet News, "As His Market Explodes, KAWS Parts Ways With Longtime Dealer Perrotin to Show Exclusively with Skarstedt," July 3, 2019 (https://news.artnet.com/market/kaws-leaves-perrotin-skarstedt-1592062) (last visited August 3, 2022).

[2] Art Review, "Power 100: Most influential people in 2021 in the contemporary artworld" (https://artreview.com/artist/kaws/?year=2021) (last visited August 3, 2022).

CSDOCS/41279442v2



28.     Another popular KAWS character is "BFF," a fuzzy creature featuring some of the same visual motifs as Companion, and who is sometimes depicted alongside Companion:



29.     Starting in 2019 and continuing until the present day, Plaintiff has obtained copyright registrations for its KAWS Products. Plaintiff obtained a copyright for the above-depicted Companion character covered by U.S. Copyright Office Registration No. VA 2-180-272 ("Companion," effective date of registration December 2, 2019). Similarly, Plaintiff obtained a

7

copyright for the above depicted BFF character covered by U.S. Copyright Office Registration No. VA 2-182-652 ("BFF," effective date of registration December 12, 2019). Exemplary units of the Companion and BFF copyrighted works have been deposited with the United States Copyright Office and remain available for inspection there.

30.     From the date of the creation of the first KAWS Products to the present, Plaintiff is and has been the sole and official source of genuine KAWS Products in the United States. Plaintiff sells KAWS Products through Mr. Donnelly's exclusive representation by Skarstedt Gallery and through online retailers including stockx.com and kith.com.

31.     Since at least 1999, the KAWS Trademarks are and have been the subject of substantial and continuous marketing and promotion by Plaintiff. Plaintiff has and continues to widely market and promote the KAWS Trademarks in the industry and to consumers. For example, Plaintiff promotes KAWS Products through its website (https://kawsone.com/), through the Skarstedt Gallery, and by showing works at international art fairs such as Art Basel Miami Beach. Further, Plaintiff extensively promotes KAWS Products on social media such as Instagram (over 4.2 million followers).

32.     The KAWS Trademarks are distinctive and identify the artwork as coming from Plaintiff. Plaintiff's typical practice is to tie its name to its marketing of KAWS Products. For example, KAWS Products sold on the online retailer stockx.com—including the above-depicted Companion and BFF—all bear at least the trademark "KAWS," in addition to embodying one or more of the KAWS Copyrights or KAWS Trademarks. *See* https://stockx.com/kaws.

33.     The registration for the KAWS Trademarks constitutes prima facie evidence of their validity and of Plaintiff's exclusive right to use that trademark pursuant to 15 U.S.C. § 1057(b).

34.     The KAWS Trademarks qualify as a famous mark, as that term is used in 15 U.S.C. §1125 (c)(1), and they have been continuously used and never abandoned.

35.     Plaintiff has expended substantial time, money, and other resources in developing, advertising, and otherwise promoting the KAWS Products. As a result, as the New York Times

CSDOCS/41279442v2

Magazine observed, "Companion is a brand logo, and a successful one at that—not quite as recognizable as the Nike swoosh, but give it time."[3] Indeed, products embodying either or both of the KAWS Copyrights and the KAWS Trademarks are widely recognized and exclusively associated by consumers, the public, and the trade as being products sourced from Plaintiff. For example:

    a. ArtReview named Mr. Donnelly as #29 in its 2021 list of the 100 most influential people in the contemporary art world, stating that "he has, in the past 20 years, achieved a level of brand recognition through commercial partnerships and celebrity supporters that few in the field can match." (https://artreview.com/artist/kaws/) (last visited August 3, 2022).

    b. In 2021, the Brooklyn Museum showed a major exhibition, "KAWS: WHAT PARTY," featuring Mr. Donnelly's works in "a sweeping survey featuring more than one hundred broad-ranging works, such as rarely seen graffiti drawings and notebooks, paintings and sculptures, smaller collectibles, furniture, and monumental installations of his popular COMPANION figures." (https://www.brooklynmuseum.org/exhibitions/kaws_what_party) (last visited August 3, 2022).

    c. In a February 9, 2021 profile, the New York Times Magazine described Mr. Donnelly as "an increasingly recognizable sight at major art institutions," observed that "you could make the argument that Donnelly is the most beloved contemporary artist alive today," and "a level of enthusiasm among his fans usually reserved for actual pop stars. In the summer of 2019, when Donnelly debuted a new T-shirt line with Uniqlo that featured his characters, the release caused near riots in multiple malls across mainland China." (https://www.nytimes.com/2021/02/09/magazine/the-surprising-ascent-of-kaws.html) (last visited August 3, 2022).

36.    Plaintiff owns all rights, including without limitation, the rights to reproduce the copyrighted works in copies, to prepare derivative works based upon the copyrighted works, and to distribute copies of the copyrighted works to the public by sale or other transfer of ownership, or by rental, lease, or lending, in the KAWS Copyrights as the owner of those copyrights.

---

[3] M. H. Miller, The New York Times Magazine, "The Surprising Ascent of KAWS," Feb. 9, 2021 (https://www.nytimes.com/2021/02/09/magazine/the-surprising-ascent-of-kaws.html) (last visited August 3, 2022).

CSDOCS/41279442v2

### The Defendants' Unlawful Conduct

37.     The success of the KAWS Products has resulted in significant counterfeiting. Plaintiff has identified numerous Defendant Internet Stores linked to fully interactive websites on e-commerce sites including the Marketplace Platforms. These Defendant Internet Stores offer for sale, sell, and import Counterfeit Products to consumers in this Judicial District and throughout the United States.

38.     Defendants have persisted in creating such online marketplaces and internet stores, like the Defendant Internet Stores. In fact, such online marketplaces and stores are estimated to receive tens of millions of visits per year and to generate over $135 billion in annual online sales. According to an intellectual property rights seizures statistics report issued by the United States Department of Homeland Security, the manufacturer's suggested retail price of goods seized by the U.S. government in fiscal year 2020 was over $1.3 billion. Websites like the Defendant Internet Stores are also estimated to contribute to tens of thousands of lost jobs for legitimate businesses and broader economic damages such as lost tax revenue every year.

39.     On personal knowledge and belief, Defendants facilitate sales by designing the Defendant Internet Stores so that they appear to unknowing consumers to be authorized online retailers, outlet stores, or wholesalers selling genuine KAWS Products. Many of the Defendant Internet Stores look sophisticated and accept payment in U.S. dollars via credit cards, Western Union, and PayPal. Defendant Internet Stores often include images and design elements that make it very difficult for consumers to distinguish such counterfeit sites from an authorized website.

40.     Defendants further perpetuate the illusion of legitimacy by offering "live 24/7" customer service and using indicia of authenticity and security that consumers have come to associate with authorized retailers, including the McAfee® Security, VeriSign®, Visa®, MasterCard®, and PayPal® logos.

41.     Plaintiff has not licensed or authorized Defendants to use the KAWS Copyrights or the KAWS Trademarks. None of the Defendants is an authorized retailer of genuine KAWS Products.

CSDOCS/41279442v2

42.     On personal knowledge and belief, Defendants also deceive unknowing consumers by using without authorization the KAWS Copyrights and the KAWS Trademarks within the product descriptions, content, text, and/or meta tags of their websites to attract various search engines crawling the Internet looking for websites relevant to consumer searches for KAWS Products. Additionally, upon information and belief, Defendants use other unauthorized search engine optimization ("SEO") tactics and social media spamming so that the Defendant Internet Stores listings show up at or near the top of relevant search results and misdirect consumers searching for genuine KAWS Products. Further, Defendants utilize similar illegitimate SEO tactics to propel new domain names to the top of search results after others are shut down. As such, Plaintiff also seeks to disable the Defendant Internet Stores owned and/or operated by Defendants that are the means by which the Defendants could continue to sell Counterfeit Products into this Judicial District.

43.     On information and belief, Defendants go to great lengths to conceal their identities and often use multiple fictitious names and addresses to register and operate their massive network of Defendant Internet Stores. For example, it is common practice for counterfeiters to register their domain names and/or User Accounts with incomplete information, randomly typed letters, or omitted cities or states.

44.     On personal knowledge and belief, Defendants regularly create new websites and online marketplace accounts on various platforms using the identities listed in Schedule A to the Complaint, as well as other unknown fictitious names and addresses. Such Defendant Internet Store registration patterns are one of many common tactics used by the Defendants to conceal their identities, the full scope and interworking of their massive counterfeiting operation, and to avoid being shut down.

45.     On personal knowledge and belief, even though Defendants operate under multiple fictitious names, there are numerous similarities among the Defendants' Internet Stores.  For example, some of the Defendant marketplace websites have virtually identical layouts, even though different aliases were used to register the respective domain names.

11

46.     In addition, the Counterfeit Products for sale in the Defendants' Internet Stores bear similarities and indicia of being related to one another, suggesting that the Counterfeit Products were manufactured by and come from a common source and that, upon information and belief, Defendants are interrelated.

47.     The Defendants' Internet Stores also include other notable common features, including accepted payment methods, check-out methods, metadata, illegitimate SEO tactics, HTML user-defined variables, domain redirection, lack of contact information, identically or similarly priced items and volume sales discounts, similar hosting services, similar name servers, and the use of the same text and images.

48.     In addition, Defendants in this case and defendants in other similar cases against online counterfeiters use a variety of other common tactics to evade enforcement efforts. For example, counterfeiters like Defendants will often register new online marketplace accounts under User Accounts once they receive notice of a lawsuit.[4]  Consumers of toys are at especially high risks and warned to be particularly vigilant.[5]

49.     Counterfeiters also often move website hosting to rogue servers located outside the United States once notice of a lawsuit is received. Rogue servers are notorious for ignoring take down demands sent by brand owners.[6]

---

[4]     https://www.ice.gov/news/releases/buyers-beware-ice-hsi-and-cbp-boston-warn-consumers-about-counterfeit-goods-during (noting counterfeiters are adept at "setting up online stores to lure the public into thinking they are purchasing legitimate good on legitimate websites") (last visited August 3, 2022).

[5]     https://www.ice.gov/news/releases/new-toolkit-helps-consumers-avoid-scams-while-holiday-shopping (issuing warnings in the context of counterfeit and knockoff toys, and quoting industry leaders that "[w]hen it comes to fake toys, there are significant safety concerns." (last visited August 3, 2022).

[6] While discussed in the context of false pharma supply chains, rogue internet servers and sellers are a well-known tactic that have even been covered in congressional committee hearings. https://www.govinfo.gov/content/pkg/CHRG-113hhrg88828/html/CHRG-113hhrg88828.htm (last visited August 3, 2022).

CSDOCS/41279442v2

50.     Counterfeiters also typically ship products in small quantities via international mail to minimize detection by U.S. Customs and Border Protection. A 2012 U.S. Customs and Border Protection report on seizure statistics indicated that the Internet has fueled "explosive growth" in the number of small packages of counterfeit goods shipped through the mail and express carriers.

51.     Further, counterfeiters such as Defendants typically operate multiple credit card merchant accounts and PayPal accounts behind layers of payment gateways so that they can continue operation in spite of Plaintiff's enforcement efforts.

52.      On personal knowledge and belief, Defendants maintain off-shore bank accounts and regularly move funds from their PayPal accounts to off-shore bank accounts outside the jurisdiction of this Court. Indeed, analysis of PayPal transaction logs from previous similar cases indicates that offshore counterfeiters regularly move funds from U.S.-based PayPal accounts to foreign-based bank accounts outside the jurisdiction of this Court.

53.     Defendants, without any authorization or license from Plaintiff, have knowingly and willfully used and continue to use the KAWS Copyrights and the KAWS Trademarks in connection with the advertisement, distribution, offering for sale, and sale of Counterfeit Products into the United States and New York over the Internet.

54.     Each Defendant Internet Store offers shipping to the United States, including New York (in this Judicial District) and, on information and belief, each Defendant has offered to sell counterfeit KAWS Products into the United States, including New York (in this Judicial District).

55.     Defendants' use of the KAWS Copyrights and the KAWS Trademarks in connection with the advertising, distribution, offering for sale, and sale of Counterfeit Products is likely to cause and has caused confusion, mistake, and deception by and among consumers and is irreparably harming Plaintiff.

56.     Prior to and contemporaneous with their counterfeiting and infringing actions alleged herein, Defendants had knowledge of Plaintiff's ownership of the KAWS Copyrights and the KAWS Trademarks, of the fame and incalculable goodwill associated therewith and of the

CSDOCS/41279442v2

popularity and success of the KAWS Products, and in bad faith proceeded to manufacture, market, develop, offer to be sold, and/or sell the Counterfeit Products.

57.     Defendants have been engaging in the illegal counterfeiting and infringing actions, as alleged herein, knowingly and intentionally, or with reckless disregard or willful blindness to Plaintiff's rights, or in bad faith, for the purpose of trading on the goodwill and reputation of Plaintiff and the KAWS Products.

## FIRST CAUSE OF ACTION

## COPYRIGHT INFRINGEMENT (17 U.S.C. § 101, et seq.)

### [Against Defendants Designated in Schedule A to the Complaint]

58.     Plaintiff repeats and incorporates by reference herein its allegations contained in paragraphs 1-57 of this Complaint.

59.     Plaintiff owns all exclusive rights, including without limitation the rights to reproduce the copyrighted works in copies, to prepare derivative works based upon the copyrighted works, and to distribute copies of the copyrighted works to the public by sale or other transfer of ownership, or by rental, lease, or lending, in the KAWS Copyrights.

60.     Defendants have sold, offered to sell, marketed, distributed, and advertised, and are still selling, offering to sell, marketing, distributing, and advertising products in connection with the KAWS Copyrights without Plaintiff's permission.

61.     Defendants had access to the KAWS Products incorporating Plaintiff's registered copyright before Defendants created the Defendant Internet Stores.

62.     Upon information and belief, Defendants have directly copied the KAWS Copyrights. Alternatively, Defendants' representations of Plaintiff's copyrights for the KAWS Products in the online marketplace accounts are strikingly similar, or at the very least substantially similar to the KAWS Copyrights, and constitute unauthorized copying, reproduction, distribution, creation of a derivative work, and/or public display of Plaintiff's copyrights for the KAWS Products.

CSDOCS/41279442v2

63.     As just one example, Defendants deceive unknowing consumers by using the KAWS Copyrights without authorization within the product descriptions of their online marketplace accounts to attract customers as follows:

*Exemplary Images of Plaintiff's Registered KAWS Copyright Works*



*Compared to Exemplary Counterfeit Products Offered by Defendants*



64.     Defendants' exploitation of Plaintiff's copyrights for the KAWS Products in the Defendant Internet Stores constitutes infringement of the KAWS Copyrights.

65.     On information and belief, Defendants' infringing acts were willful, deliberate, and committed with prior notice and knowledge of Plaintiff's copyright. Each Defendant willfully,

wantonly, and in conscious disregard and intentional indifference to the rights of Plaintiff made and distributed in the United States, including this District, caused to be made and distributed in the United States, including this District, and aided, abetted, contributed to, and participated in the unauthorized making and distribution of Counterfeit Products.

66.     Each Defendant either knew, or should have reasonably known, that Plaintiff's KAWS Products were protected by copyright and that their representations infringed on Plaintiff's copyrights.  Each Defendant continues to infringe upon Plaintiff's rights in and to the various copyrighted works.

67.     As a direct and proximate result of their wrongful conduct, Defendants have realized and continue to realize profits and other benefits rightfully belonging to Plaintiff. Accordingly, Plaintiff seeks an award of damages pursuant to 17 U.S.C. § 504.

68.     In addition to Plaintiff's actual damages, Plaintiff is entitled to receive the profits made by the Defendants from their wrongful acts, pursuant to 17 U.S.C. § 504(b). Each Defendant should be required to account for all gains, profits, and advantages derived by each Defendant from their acts of infringement.

69.     In the alternative, Plaintiff is entitled to, and may elect to choose statutory damages pursuant to 17 U.S.C. § 504(c), which should be enhanced by 17 U.S.C. § 504(c)(2) because of Defendants' willful copyright infringement.

70.     Plaintiff is entitled to, and may elect to choose, injunctive relief under 17 U.S.C. § 502, enjoining any use or exploitation by Defendants of their infringing work and for an order under 17 U.S.C. § 503 that any of Defendants' infringing products be impounded and destroyed.

71.     Plaintiff seeks and is also entitled to recover reasonable attorneys' fees and costs of suit pursuant to 17 U.S.C. § 505.

72.     Plaintiff has no adequate remedy at law, and, if Defendants' actions are not enjoined, Plaintiff will continue to suffer irreparable harm to their reputation and the goodwill of its well-known KAWS Copyrights.

CSDOCS/41279442v2

## SECOND CAUSE OF ACTION

## TRADEMARK INFRINGEMENT AND COUNTERFEITING (15 U.S.C. § 1114)

### [Against Defendants Designated in Schedule A]

73.     Plaintiff repeats and incorporates by reference herein its allegations contained in paragraphs 1-72 of this Complaint.

74.     This is a trademark infringement action against Defendants based on their unauthorized use in commerce of counterfeit imitations of the registered KAWS Trademarks in connection with the sale, offering for sale, distribution, and/or advertising of infringing goods. The KAWS Trademarks is a highly distinctive mark. Consumers have come to expect the highest quality from Plaintiff's products provided under the KAWS Trademarks.

75.     Defendants have sold, offered to sell, marketed, distributed, and advertised, and are still selling, offering to sell, marketing, distributing, and advertising products in connection with the KAWS Trademarks without Plaintiff's permission.

76.     Plaintiff is the registered owner of the KAWS Trademarks. The United States Registrations for the KAWS Trademarks (Exhibit 2) are in full force and effect. Upon information and belief, Defendants have knowledge of Plaintiff's rights in the KAWS Trademarks and are willfully infringing and intentionally using counterfeits of the KAWS Trademarks. Defendants' willful, intentional, and unauthorized use of the KAWS Trademarks is likely to cause and is causing confusion, mistake, and deception as to the origin and quality of the counterfeit goods among the general public.

77.     Defendants' activities constitute willful trademark infringement and counterfeiting under 15 U.S.C. §§ 1114, 1117.

78.     The injuries and damages sustained by Plaintiff have been directly and proximately caused by Defendants' wrongful reproduction, use, advertisement, promotion, offering to sell, and sale of counterfeit KAWS Products.

CSDOCS/41279442v2

79.     Plaintiff has no adequate remedy at law, and, if Defendants' actions are not enjoined, Plaintiff will continue to suffer irreparable harm to their reputation and the goodwill of its well-known KAWS Trademark.

### THIRD CAUSE OF ACTION

### FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125(a))

### [Against Defendants Designated in Schedule A]

80.     Plaintiff repeats and incorporates by reference herein its allegations contained in paragraphs 1-79 of this Complaint.

81.     Defendants' promotion, marketing, offering for sale, and sale of Counterfeit Products has created and is creating a likelihood of confusion, mistake, and deception among the general public as to the affiliation, connection, or association with Plaintiff or the origin, sponsorship, or approval of Defendants' Counterfeit Products by Plaintiff.

82.     By using the KAWS Trademarks in connection with the sale of Counterfeit Products, Defendants create a false designation of origin and a misleading representation of fact as to the origin and sponsorship of the Counterfeit Products.

83.     Defendants' conduct constitutes willful false designation of origin and misrepresentation of fact as to the origin and/or sponsorship of the Counterfeit Products to the general public under 15 U.S.C. §§ 1114, 1125.

84.     Plaintiff has no adequate remedy at law, and, if Defendants' actions are not enjoined, Plaintiff will continue to suffer irreparable harm to their reputation and the goodwill of their brand.

### FOURTH CAUSE OF ACTION

### UNFAIR COMPETITION (New York Common Law)

### [Against Defendants Designated in Schedule A]

85.     Plaintiff repeats and incorporates by reference herein its allegations contained in paragraphs 1-84 of this Complaint.

86.     Plaintiff has not licensed or authorized Defendants to use the KAWS Copyrights or the KAWS Trademarks, and none of the Defendants are authorized retailers of genuine KAWS Products.

87.     Defendants knowingly and intentionally trade upon Plaintiff's reputation and goodwill by selling and/or offering for sale products in connection with Plaintiff's KAWS Copyrights and KAWS Trademarks.

88.     Defendants' promotion, marketing, offering for sale, and sale of Counterfeit Products has created and is creating a likelihood of confusion, mistake, and deception among the general public as to the quality, affiliation, connection, or association with Plaintiff or the origin, sponsorship, or approval of Defendants' Counterfeit Products by Plaintiff.

89.     Defendants knew, or should have known, that their promotion, marketing, offering for sale, and sale of Counterfeit Products has caused and will continue to cause confusion, mistake, and deception among purchasers, users, and the public.

90.     In fact, Defendants have fraudulently represented by their statements and actions that the Counterfeit Products are Plaintiff's products including, for example, by: (i) using SEO tactics and social media to misdirect customers seeking KAWS Products to the Defendant Internet Stores; (ii) using deceptive advertising practices within the text and metadata of the Defendant Internet Stores; and (iii) taking other steps to deceive and confuse the consuming public.

91.     On information and belief, Defendants' conduct is willful and intentional as Defendants attempt to avoid liability by concealing their identities, using multiple fictitious names and addresses to register and operate their illegal counterfeiting operations and Defendant Internet Stores.

92.     Plaintiff has no adequate remedy at law, and Defendants' conduct has caused Plaintiff to suffer damage to its reputation and goodwill. Unless enjoined by the Court, Plaintiff will suffer future irreparable harm as a direct result of Defendants' unlawful activities.

## PRAYER FOR RELIEF

19

WHEREFORE, Plaintiff prays for judgment against Defendants and each of them as follows:

1.      That Defendants, their affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under, or in active concert with them be temporarily, preliminarily, and permanently enjoined and restrained from:

   a.    using the KAWS Copyrights and KAWS Trademarks or any reproductions, counterfeit copies, or colorable imitations thereof in any manner in connection with the distribution, marketing, advertising, offering for sale, or sale of any product that is not a genuine KAWS Product or is not authorized by Plaintiff to be sold in connection with the KAWS Copyrights and KAWS Trademarks;

   b.    passing off, inducing, or enabling others to sell or pass off any product as a genuine KAWS Product or any other product produced by Plaintiff that is not Plaintiff's or not produced under the authorization, control, or supervision of Plaintiff and approved by Plaintiff for sale under the KAWS Copyrights and KAWS Trademarks;

   c.    committing any acts calculated to cause consumers to believe that Defendants' Counterfeit Products are those sold under the authorization, control, or supervision of Plaintiff, or are sponsored by, approved by, or otherwise connected with Plaintiff;

   d.    further infringing the KAWS Copyrights and KAWS Trademarks and damaging Plaintiff's goodwill;

   e.    otherwise competing unfairly with Plaintiff in any manner;

   f.     shipping, delivering, holding for sale, transferring, or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for Plaintiff, nor authorized by Plaintiff to be sold or offered for sale, and which copy the KAWS

Copyrights and KAWS Trademarks or any reproductions, counterfeit copies, or colorable imitations thereof;

g.  using, linking to, transferring, selling, exercising control over, or otherwise owning any online marketplace accounts, the Defendant Internet Stores, or any other domain name or online marketplace account that is being used to sell or is the means by which Defendants could continue to sell Counterfeit Products; and

h.  operating and/or hosting online marketplace accounts at the Defendant Internet Stores that are involved with the distribution, marketing, advertising, offering for sale, or sale of any product embodying the KAWS Copyrights and KAWS Trademarks or any reproduction, counterfeit copy or colorable imitation thereof that is not a genuine KAWS Product or not authorized by Plaintiff to be sold in connection with the KAWS Copyrights and KAWS Trademarks.

2.  Entry of an Order that the Marketplace Platforms, including without limitation Alibaba, AliExpress, Amazon, DHgate, eBay, etsy, JD, Redbubble, Walmart, Wish, and any other online marketplace account through which Defendants are selling Counterfeit Products:

a.  disable and cease providing services for any accounts through which Defendants sell Counterfeit Products, including any accounts associated with the Defendants listed on Schedule A;

b.  disable and cease displaying any advertisements used by or associated with Defendants in connection with their sale of Counterfeit Products; and

c.  take all steps necessary to prevent links to the Defendant Internet Stores identified on Schedule A from displaying in search results, including, but not limited to, removing links to the Defendant Internet Stores from any search index.

CSDOCS/41279442v2

3.      That Defendants account for and pay to Plaintiff all profits realized by Defendants by reason of Defendants' unlawful acts herein alleged, and that the amount of damages for infringement of the KAWS Trademarks be increased by a sum not exceeding three times the amount thereof as provided by 15 U.S.C. § 1117;

4.      In the alternative, that Plaintiff be awarded statutory damages of not more than $30,000 for each and every infringement of the KAWS Copyrights pursuant to 17 U.S.C. § 504(c), which should be enhanced to a sum of not more than $150,000 by 17 U.S.C. § 504(c)(2) because of Defendants' willful copyright infringement and not less than $1,000 and not more than $2,000,000 for each and every use of the KAWS Trademarks and statutory damages of not less than $750 pursuant to 15 U.S.C. § 1117(c);

5.      That Plaintiff be awarded its reasonable attorneys' fees and costs; and

6.      Award any and all other relief that this Court deems just and proper.

Dated:      August 8, 2022                    Respectfully submitted,

                                              COLE SCHOTZ P.C.


                                        By:___/s/ Michael R. Yellin_____
                                              Michael R. Yellin
                                              1325 Avenue of the Americas
                                              19th Floor
                                              New York, New York 10017
                                              (201) 525-6258
                                              myellin@coleschotz.com

                                                  -and-

                                              THOITS LAW
                                              Nathan Monroe-Yavneh, Esq.
                                              400 Main Street, Suite 250
                                              Los Altos, CA 94022
                                              (650) 327-4200
                                              nmonroeyavneh@thoits.com

                                              *Attorneys for Plaintiff*
                                              *KAWS, Inc.*

CSDOCS/41279442v2